35 F.3d 382
 63 USLW 2244, 18 Employee Benefits Cas. 1982
 Shirley SALTARELLI, individually and as the Administrator of
the Estate of Joseph Saltarelli, Plaintiff,
v.
The BOB BAKER GROUP MEDICAL TRUST; All-American
Chevrolet-Geo; Bob Baker Enterprises, Inc.,
Defendants-cross-claimants-Appellants,
v.
DAVE HAGEN FACTORS, INC., d/b/a VIP Chevrolet;
Downtown/Future Ford Health Protection Plan,
Defendants-cross-defendants-Appellees.
 No. 92-56252.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 1, 1994.
Decided Aug. 31, 1994.
 
 Karl R. Lindegren, Fisher & Phillips, Newport Beach, CA, for defendants-cross-claimants-appellants.
 Bruno Wolfenzon, Campell, Rubino, Torres & Wolfenzon, San Diego, CA, for defendants-cross-defendants-appellees.
 Appeal from the United States District Court for the Southern District of California.
 Before: D.W. NELSON, REINHARDT, and BRUNETTI, Circuit Judges.
 BRUNETTI, Circuit Judge:
 
 
 1
 Bob Baker Group Medical Trust appeals the district court's adverse finding of liability in a medical insurance dispute. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291 and affirm.
 
 I.
 
 2
 Downtown/Future Ford Health Protection Plan ("Future Ford") and Bob Baker Group Medical Trust ("Baker Group") are group health plans for two sets of affiliated auto dealerships. Joseph Saltarelli worked for a Future Ford dealership until January 5, 1990 and received medical coverage through the Future Ford plan. He then left Future Ford and began work at a Baker Group dealership on January 8, 1990. The Baker Group plan had a three-month waiting period before coverage began on April 8. Saltarelli passed a physical exam by Baker Group's chosen doctor on January 3, 1990.
 
 
 3
 For the interim, Saltarelli elected to continue his Future Ford coverage. Most group health plans are required to provide the opportunity to elect such continuation coverage under the terms of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Secs. 1001 et seq. (1988), as amended by the Comprehensive Omnibus Budget Reconciliation Act of 1986 ("COBRA"), 29 U.S.C. Secs. 1161-68,[1] and Future Ford was no exception. Saltarelli continued his coverage by paying the full Future Ford premium for the months of January, February, and March. Near the end of March, Saltarelli received the Future Ford Plan's April bill. He paid it, but sent back the invoice with a handwritten notation: "Please send bill for Shirley [Saltarelli's wife] only May 1, 1990. I will be going off COBRA as of that date May 1, 1990." Future Ford accordingly billed Mrs. Saltarelli at the beginning of May, and she paid her premium.
 
 
 4
 On May 4, 1990, Saltarelli was hospitalized and in succeeding days was diagnosed with stomach cancer. Soon after the diagnosis, Baker Group advised that it would probably not cover his treatments because of the plan's pre-existing condition exclusion. On May 18, 1990, Saltarelli underwent surgery for the cancer. On May 23, 1990, the Saltarellis sent checks to Future Ford in payment of Joseph's May premium and their combined June premium. Mrs. Saltarelli enclosed a letter which stated: "Pursuant to 29 USC Section 1162(c), any payment made for COBRA coverage within 30 days after the date due is considered to be timely."[2]
 
 
 5
 On May 29, 1990, Joseph Saltarelli died. His widow subsequently demanded payment of his medical bills from both plans. Each plan denied any liability. Saltarelli's widow, as his executor, sued them both and they cross-claimed against each other. Baker Group later settled with Mrs. Saltarelli in exchange for an assignment of the estate's claims against Future Ford.
 
 
 6
 Baker Group claims it is not liable because its coverage, for which Saltarelli became eligible in April 1990, excluded pre-existing conditions such as Saltarelli's subsequently diagnosed cancer. Future Ford claims it is not liable because, although Saltarelli maintained his old coverage through April 1990 under COBRA, he notified Future Ford before May that he would be "going off COBRA"; the plan argues that COBRA's 30-day grace period for premium payments did not apply to Saltarelli's May 23 attempt to pay up because he already had affirmatively terminated his coverage.
 
 
 7
 The case was submitted to the district court on the agreed facts for a bench trial to determine coverage liability. Adopting findings of fact and conclusions of law prepared by Future Ford, the district court found Future Ford not liable, holding that the Baker Group pre-existing condition exclusion was unenforceable and that Saltarelli's notice had irrevocably terminated his coverage under the Future Ford plan.
 
 II.
 A. Standard of Review
 
 8
 In reviewing a bench trial, this court shall not set aside the district court's findings of fact, whether based on oral or documentary evidence, unless they are clearly erroneous. Fed.R.Civ.P. 52(a). The clear error standard applies to those findings of fact the district court adopts from proposed findings submitted by the parties. See Anderson v. Bessemer, 470 U.S. 564, 571-73, 105 S.Ct. 1504, 1510-11, 84 L.Ed.2d 518 (1985); Barnett v. Sea Land Service, Inc., 875 F.2d 741, 745 (9th Cir.1989). Clear error review also applies to the results of "essentially factual" inquiries applying the law to the facts. See United States v. Martinez-Gonzalez, 962 F.2d 874, 878 (9th Cir.1992) (as amended). The district court's conclusions of law are reviewed de novo. Brooker v. Desert Hospital Corp., 947 F.2d 412, 415 (9th Cir.1991).
 
 
 9
 B. Baker Group's Pre-Existing Condition Exclusion
 
 
 10
 The Baker Group Summary Plan Description, which was provided to participants such as Saltarelli, covers 43 pages in single-spaced typescript. The preamble states that "[t]he Plan is subject to all terms, provisions and conditions recited on the following pages."
 
 
 11
 Among the Baker Group plan provisions is an exclusion for "pre-existing conditions." However, an insured reading the table of contents of the plan summary would find no heading for this critically important item. The only arguably relevant heading apparent from the table of contents, "Eligibility Rules: Employee Eligibility and Effective Date," contains no reference to it at all. The "Medical Care Benefits" chapter in the body of the document does reveal a subsection entitled "Exclusions and Limitations," but the pre-existing conditions exclusion receives no mention here either.
 
 
 12
 Instead, the exclusion can be found only in the midst of the "Definitions" chapter.[3] Even then, it requires a coordinated reading of three separate definitions: those for "Pre-Existing Condition," "Illness," and "Injury."[4] The district court found as matters of fact that:
 
 
 13
 11. The Baker Group Plan's purported exclusion for pre-existing conditions is not conspicuous enough to attract the attention of a reasonable layman.
 
 
 14
 12. The Baker Group Plan's purported exclusion for pre-existing conditions is not clear or plain, inter alia, because it includes the term "illness", and [states that illness "must be medically diagnosed and receive treatment from a physician."] ...
 
 
 15
 16. As a reasonable layman, Mr. Saltarelli could not be expected to look under the medical definitions of The Baker Group Plan, for an exclusion for pre-existing conditions.
 
 
 16
 The court did not clearly err in making these findings; indeed, we emphatically agree with them. Baker Group chose to bury one of the plan's most significant provisions amidst definitions, rather than forthrightly stating the pre-existing conditions exclusion in the operative clauses of the plan description.
 
 
 17
 C. The Reasonable Expectations of the Insured
 
 
 18
 From these findings, the district court drew the legal conclusion that the Baker Group Plan exclusion was unenforceable. It cited no authority for this proposition.
 
 
 19
 Baker Group argues that Future Ford, the drafter of the court's conclusions, improperly imported state law authority here because ERISA preempts almost all state law which might otherwise bear upon interpretation of COBRA coverage. FMC Corp. v. Holliday, 498 U.S. 52, 56-58, 111 S.Ct. 403, 406-08, 112 L.Ed.2d 356 (1990); Kanne v. Connecticut General Life Ins. Co., 867 F.2d 489, 494 (9th Cir.1988), cert. denied, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989). Baker Plan correctly notes that Future Ford cited only California state law in arguing to the district court that the lack of a clear, plain, and conspicuous discussion of the exclusion rendered it unenforceable.
 
 
 20
 However, ERISA preemption does not mean that general principles of state law are irrelevant to interpretation of ERISA-governed insurance contracts. On the contrary, "[t]he courts are directed to formulate a nationally uniform federal common law to supplement the explicit provisions and general policies set out in ERISA, referring to and guided by principles of state law when appropriate, but governed by the federal policies at issue." Menhorn v. Firestone Tire & Rubber Co., 738 F.2d 1496, 1500 (9th Cir.1984); see also Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1439 (9th Cir.1990) ("interpretation of ERISA insurance policies is governed by a uniform federal common law"); Kunin v. Benefit Trust Life Ins. Co., 910 F.2d 534, 540 (9th Cir.) (state-law principle of contra proferentum applies to the federal courts' interpretation of ERISA insurance contracts), cert. denied, 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 587 (1990).
 
 
 21
 In finding that the lack of a clear, plain and conspicuous statement of the exclusion rendered it unenforceable, the district court was applying the strong modern trend in insurance contract interpretation--the "reasonable expectations" doctrine. This doctrine, which grew out of the law of adhesion contracts and construction of ambiguities in insurance policies, has been formulated as follows:
 
 
 22
 In general, courts will protect the reasonable expectations of applicants, insureds, and intended beneficiaries regarding the coverage afforded by insurance carriers even though a careful examination of the policy provisions indicates that such expectations are contrary to the expressed intention of the insurer.
 
 
 23
 Robert E. Keeton & Alan I. Widiss, Insurance Law: A Guide to Fundamental Principles, Legal Doctrines, and Commercial Practices Sec. 6.3 (West 1988); see also Robert Keeton, Insurance Law Rights at Variance with Policy Provisions, 83 Harv.L.Rev. 961 (1970). For purposes of the instant case, the doctrine has been stated more specifically:
 
 
 24
 [a]n insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured.
 
 
 25
 National Mutual Ins. Co. v. McMahon & Sons, Inc., 177 W.Va. 734, 356 S.E.2d 488, 496 (1987) (citation omitted); cf. Kunin, 910 F.2d at 540 (in the context of interpreting ambiguous provisions, "the insurer should be expected to set forth any limitations on its liability clearly enough for a common layperson to understand").
 
 
 26
 The application of the reasonable expectations doctrine to ERISA insurance contract interpretation presents a question of first impression in this circuit.[5] Two factors are significant in our consideration. First, protecting the reasonable expectations of insureds appropriately serves the federal policies underlying ERISA, including provision of adequate information to plan participants and protection of their interests.[6] Second, at least thirty states have explicitly incorporated some variation of the reasonable expectations doctrine into their own law, which demonstrates its widespread acceptance and vitality.[7]
 
 
 27
 We hereby adopt the doctrine of reasonable expectations as a principle of the uniform federal common law informing interpretation of ERISA-governed insurance contracts.[8] As a result, we affirm the district court's legal determination that, since Baker Group's attempted exclusion was not clear, plain, and conspicuous enough to negate layman Saltarelli's objectively reasonable expectations of coverage, it was unenforceable and Baker Group was liable for Saltarelli's medical expenses incurred beginning April 8, 1990.
 
 D. Automatic Termination of COBRA Coverage
 
 28
 In the second part of its analysis, the district court found that Saltarelli's note saying he would be "going off COBRA" had operated irrevocably to terminate his Future Ford coverage. We need not reach this issue, for the judgment that the Baker Group exclusion was unenforceable automatically terminates any liability for Future Ford and renders Baker Group solely liable.[9]
 
 
 29
 Although the district court did not so reason, in reviewing the decisions of the district court we may affirm on any basis supported by the record. United States v. Washington, 969 F.2d 752, 755 (9th Cir.1992), cert. denied sub nom. Lummi Indian Tribe v. Washington, --- U.S. ----, 113 S.Ct. 1945, 123 L.Ed.2d 651 (1993).
 
 
 30
 Section 1162(2)(D) of COBRA dictates that, absent other triggering events, plans need not make continuation coverage available after
 
 
 31
 The date on which the qualified beneficiary first becomes, after the date of the election--
 
 
 32
 (i) covered under any other group health plan (as an employee or otherwise) 'which does not contain any exclusion or limitation with respect to any pre-existing condition of such beneficiary' ...
 
 
 33
 29 U.S.C. Sec. 1162(2)(D). In other words, Congress recognized that continuation coverage may be a burden on group health plans and sought to minimize it by permitting quick termination when the insured obtains full protection from another plan.
 
 
 34
 Future Ford took advantage of this aspect of the law. The Future Ford plan summary description includes a table of contents heading called "Continuation of Coverage."[10] The text of that section clearly states: "Continuation of Coverage shall not be provided beyond whichever of the following dates is first to occur: ... 4. the date on which the Covered Person becomes covered under any other group health plan ..." Since the Baker Group plan exclusion was unenforceable, Sec. 1162(2)(D) and this provision operated to terminate Future Ford's potential liability on the day Saltarelli became covered by the Baker Group plan. We affirm the judgment of the district court.
 
 III.
 
 35
 Both parties have requested attorney's fees on appeal pursuant to 29 U.S.C. Sec. 1132(g)(1). Recovery of attorney's fees does not necessarily depend upon the outcome. Oster v. Barco of Cal. Employees' Retirement Plan, 869 F.2d 1215, 1221 (9th Cir.1988). The factors relevant to the panel's determination include:
 
 
 36
 (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.
 
 
 37
 Id. at 1222 (quoting Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir.1980)). None of these factors weighs for or against an award to either Baker Group or Future Ford. Both requests are denied.
 
 AFFIRMED
 
 
 [1]
 These same provisions are also codified in the Internal Revenue Code, at 26 U.S.C. Sec. 4980B(f). For simplicity, all references here are to Title 29
 
 
 [2]
 Section 1162(2)(c) states in pertinent part: "The payment of any premium ... shall be considered to be timely if made within 30 days after the date due or within such longer period as applies to or under the plan."
 
 
 [3]
 An obscure reference to it does also appear in the "Late Enrollment Procedures and Conditions" subsection under "Eligibility Rules."
 
 
 [4]
 Section II.B., "Medical Definitions," begins on page 7 of the plan summary and reads as follows:
 
 
 [1]
 "Illness" shall mean bodily sickness or disease, psychiatric disorders, and congenital abnormalities of a newborn child. "Illness" must be medically diagnosed and receive treatment from a physician. For purposes of determining benefits payable, "illness" includes pregnancy
 
 
 [2]
 "Injury" shall mean accidental bodily injury sustained by the covered person while this Plan is in force on that covered person
 
 
 [5]
 "Pre-existing Condition" shall mean any injury or illness, which existed (with or without the affected person's knowledge) within nine (9) months before becoming eligible for coverage under this Plan. No medical, dental or disability benefits are payable under this Plan for pre-existing conditions or related conditions until coverage for the eligible person under this Plan has been in force for twelve (12) consecutive months
 
 
 [5]
 At least two other circuits have addressed the issue, if only obliquely. See Meester v. IASD Health Services Corp., 963 F.2d 194, 197 (8th Cir.1992) (where plan summary not ambiguous, "[t]here is therefore no occasion to apply the contra insurer or reasonable expectation doctrines", citing Delk, infra ) Delk v. Durham Life Ins. Co., 959 F.2d 104, 105-06 (8th Cir.1992) (per curiam) (distinguishing previous 8th Circuit case which held that ERISA preempts application of state-law doctrines of insurance contract interpretation and then applying contra insurer rule in an ERISA case); Pitts v. American Sec. Life Ins. Co., 931 F.2d 351, 355-56 (5th Cir.1991) (reasonable expectation of continued coverage supports holding that policy was voidable rather than void)
 
 
 [6]
 ERISA's statutory declaration of policy, 29 U.S.C. Sec. 1001 (1988), states that "owing to the lack of employee information and adequate safeguards concerning their operation, it is desirable in the interests of employees and their beneficiaries ... that disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of such plans." 29 U.S.C. Sec. 1001(a). It continues:
 It is hereby declared to be the policy of this chapter to protect ... the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.
 29 U.S.C. Sec. 1001(b).
 
 
 [7]
 See Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes Sec. 1.03[b] (6th ed. 1993) (citing cases)
 
 
 [8]
 We note, however, that "the reasonable expectation concept must be limited by something more than the fervent hope usually engendered by loss." Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co., 140 Ariz. 383, 682 P.2d 388, 395 (1984) (en banc). We leave comprehensive delineation of the doctrine's scope to future cases
 
 
 [9]
 It also obviates the need to reach the matter, hotly debated in the parties' briefs, of the Baker Group plan administrator's interpretation of the scope of the exclusion. See Kunin, 910 F.2d at 540-41
 
 
 [10]
 Ironically, the Future Ford plan's table of contents also has a subheading entitled "Full Plan Medical Pre-Existing Conditions Limitation."