Richard McCLURE, Plaintiff–Appellee,

v.

LIFE INSURANCE COMPANY OF NORTH AMERICA; The EG&G Voluntary Accident Insurance Plan; Cigna Corporation; EG&G, Inc., Defendants–Appellants.

No. 94–15874.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 8, 1995.

Decided May 23, 1996.

Travis C. Williamson, Williamson & Rush, Las Vegas, Nevada, for defendants-appellants.

Laura Wightmann FitzSimmons, Las Vegas, Nevada, for plaintiff-appellee.

Before BOOCHEVER and REINHARDT, Circuit Judges, and KING,** District Judge.

PER CURIAM:

Defendants/appellants Life Insurance Company of North America ("LINA"), the EG & G Voluntary Accident Insurance Plan,

** Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

Cigna Corporation, and EG & G, Inc. ("EG & G") appeal from the district court's decision granting plaintiff/appellee Richard McClure's ("McClure") renewed motion for summary judgment. The district court held that the "process of nature" rule was not preempted by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"), that state laws apply, and that Nevada would adopt the "process of nature" rule. The court also held that McClure's disability was the result of the process of nature, and that McClure could recover because the parties stipulated that the accident was the proximate cause of his disability.

## I

McClure started working as a fire fighter for EG & G in 1980. McClure paid all required premiums for a policy issued by LINA for accidental death, dismemberment and permanent disability ("the policy"). The policy provided for the lump sum payment of $350,000.00 to McClure if he became totally and permanently disabled because of an accident.

On November 16, 1988, McClure tripped over a guide wire and fell. This was the accident to which he attributed his disability. However, prior to the accident, on October 24, 1988, McClure began seeing Dr. Fathie, a board certified neurosurgeon. He initially complained of right side lateral thigh pain with numbness and tingling. He also complained of lower back pain for about six months. On November 4, 1988, Dr. Fathie suggested that McClure have an MRI of his lower back area, as well as other tests. Dr. Fathie found some abnormalities in McClure's discs. McClure testified, however, that the symptoms that he had prior to the fall did not cause him to modify his work activities in any way. There was no evidence contradicting that testimony.

The day after the accident, November 17, 1988, McClure again saw Dr. Fathie. The medical records reflect, however, that McClure did not inform the doctor of his accident. McClure then continued working. He was unable to perform the physical duties required by his job, however, and performed light duties, not actual fire fighting. In Octo-ber 1989, he was forced to stop working, as no light duty was available.

In January 1990, McClure began seeing an orthopedist, Dr. Brandner. Dr. Brandner concluded that the accident set in motion a chain of deterioration that resulted in the disability. The parties have stipulated that the accident was the proximate cause of the eventual total disability.

On November 27, 1990, McClure made a claim for permanent total disability benefits under the group accident policy. On May 14, 1991, his claim was denied. On July 12, 1991, he requested that his claim be reviewed, and on July 16, 1991, his claim was again denied. McClure then filed a complaint for declaratory relief and benefits under ERISA. He prevailed upon summary judgment motions.

The issues raised in this appeal are reviewed de novo. *Jesinger v. Nevada Fed. Credit Union,* 24 F.3d 1127, 1130 (9th Cir. 1994) (a grant of summary judgment is reviewed de novo); *Olson v. General Dynamics Corp.,* 960 F.2d 1418, 1420 (9th Cir.1991), *cert. denied,* 504 U.S. 986, 112 S.Ct. 2968, 119 L.Ed.2d 588 (1992). If an ERISA benefit plan gives the administrator discretionary authority to determine eligibility for benefits, or to construe the terms of the plan, then the administrator's decision is reviewed under the deferential "arbitrary and capricious" standard. *Madden v. ITT Long Term Disability Plan,* 914 F.2d 1279, 1283–84 (9th Cir.1990), *cert. denied,* 498 U.S. 1087, 111 S.Ct. 964, 112 L.Ed.2d 1051 (1991). LINA does not argue that the policy in question grants any such discretionary authority. Therefore, our review, like the district court's, is governed by Fed.R.Civ.P. 56(c), which provides that the court shall enter summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of

any genuine issue of material fact." *T.W. Elec. Serv. Inc., v. Pacific Elec. Contractors Ass'n.,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). We may affirm a summary judgment for reasons other than those relied on by the district court. *Shawmut Bank, N.A., v. Kress Assocs.,* 33 F.3d 1477, 1484 (9th Cir.1994).

■ The district court found that: 1) McClure's disability was the result of the process of nature and, 2) McClure was entitled to benefits even though he had a preexisting condition, because the accident was the proximate cause of his disability. Under the "process of nature" rule, a claimed disability is considered to have occurred immediately within the meaning of a total disability policy provision when it follows directly from the accidental injury within the time the process of nature takes.

## II.

■ Under ERISA, state law does not control the construction of the LINA policy. ERISA preempts state common-law rules related to employee benefit plans. 29 U.S.C. § 1144(a); *Evans v. Safeco Life Ins. Co.* 916 F.2d 1437, 1439 (9th Cir.1990). While ERISA's "savings" clause exempts from preemption "any law of any state which regulates insurance," 29 U.S.C. § 1144(b)(2)(A), "state laws of insurance policy interpretation do not qualify for the saving clause exception and are preempted." *Evans,* 916 F.2d at 1440. Instead, "the interpretation of ERISA insurance policies is governed by a uniform federal common law." *Id.* at 1439.

■ McClure argues that the "process of nature" rule "regulates" insurance and thus is saved from preemption by ERISA. This court need not reach the issue whether ERISA preempts a state "process of nature" rule. Even without relying on the "process of nature" rule, under the stipulation and the undisputed facts, and applying general federal rules of contract interpretation, it is clear that McClure was continuously and totally disabled immediately following the accident, and permanently and totally disabled within

one year. *See Aetna Ins. Co. v. Craftwall of Idaho, Inc.,* 757 F.2d 1030, 1034 (9th Cir. 1985) (declining to address state law question where unnecessary to resolution of case).

The parties' stipulation of facts provides:

10. McClure continued working at the Nevada Test Site but was *unable to perform all of the physical tasks required of him* because of unrelenting back pain, *beginning with the accident of November 16, 1988.* Ultimately, and the plaintiff contends because of the accident of November 16, 1988, McClure was unable to perform any of the physical tasks of a firefighter and EG & G, the employer, informed him that it had no light duty available and plaintiff was forced to stop working on October 12, 1989 ...

17. Although McClure had a pre-existing back condition that was aggravated by the accident of November 16, 1988, the fall itself was the *proximate cause of McClure's subsequent total disability.* That is, the fall of November 16, 1988, set in motion the chain of events which led to McClure's total disability retirement on October 12, 1989.

According to the LINA policy:

"Continuous and total disability", which must result from such injuries and commence within 180 days after the date of the accident, means the insured's complete inability during the first year thereof to perform *every duty* of his occupation.

(Emphasis added.) At issue is the meaning of *"every duty."* (Emphasis added). Because in the district court this issue was not specifically addressed, although generally raised, we ordered the parties to file supplemental briefs discussing this provision.

■ This court has the power to affirm a district court's grant of summary judgment on any basis supported by the record. *Golden Nugget, Inc. v. American Stock Exch., Inc.,* 828 F.2d 586, 590 (9th Cir.1987) (per curiam). "Whether, as a prudential matter, we should do so depends on the adequacy of the record and whether the issues are purely legal, putting us in essentially as advantageous a posture to decide the case as would be the district court." *Id.* In

this case, the parties' stipulation of facts puts this court in that advantageous posture.

Assuming that a particular occupation required performance of three duties, and that an employee was unable to perform one of those duties, under one interpretation, the employee could not perform "every duty" of his occupation. The other interpretation of "every duty" is that the employee would be disabled only if he or she could not perform *each* of the three duties.

■ Thus, the word "every" is ambiguous. *See* Black's Law Dictionary 555 (6th ed.1990) (defining "every" as "Each one of all; ..." *The term is sometimes equivalent to "all"; and sometimes equivalent to "each"* (emphasis added)). "Every" can mean both "all" (the entirety) and "each" (the separate parts of the entirety). The policy language could easily be made explicit and unambiguous to specify that the employee must be unable to perform every single one of his or her duties to recover benefits. Without explicit analysis of the language, courts have differently interpreted "any and every" and "each and every." *Compare, e.g., Gunderson v. W.R. Grace & Co. Long Term Disability Income Plan,* 874 F.2d 496, 498 (8th Cir. 1989) ("any and every" duty means any one of the duties associated with the job); *Brassord v. Continental Cas. Co.,* 630 F.Supp. 951, 955 (D.Conn.1986) ("each and every" duty means all of the duties associated with the job).

■ The insurance company claims that it would make no sense to interpret the contract in favor of McClure, because then an employee would be "disabled" by his inability to perform only one (perhaps trivial) duty of many job duties. The opposite is also true, however; it would make little sense to say that an employee like McClure was not disabled because, although he could not perform the physical duties required of him as a firefighter, he *could* perform at least one trivial duty of many job duties (i.e., punching a time clock). In any event, we believe the provision should be construed in a practical sense to refer to essential duties.

■ "We interpret terms in ERISA insurance policies in an ordinary and popular sense as would a [person] of average intelligence and experience." *Evans,* 916 F.2d at 1441 (quotations omitted). A common-sense interpretation of the ambiguous provision is that continuous and total disability exists if an employee is unable to perform one of the essential duties of his or her position. *See Hammond v. Fidelity and Guar. Life Ins. Co.,* 965 F.2d 428, 431 (7th Cir.1992) (as amended) (policy provides claimant is disabled when unable to carry out the "chief" duties of his job). This interpretation also favors McClure, and ERISA insurance policies are governed by the rule that ambiguous language is construed against the insurer and in favor of the insured. *Kunin v. Benefit Trust Life Ins. Co.,* 910 F.2d 534, 539–40 (9th Cir.) (as amended), *cert. denied,* 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 587 (1990).

Thus, whether we give the term "every" a common sense construction in view of its context in the policy, or we consider it to be ambiguous, we construe it in McClure's favor. Therefore, McClure suffered "continuous and total disability" under the terms of the policy.

## III

The LINA policy also provides:

"Permanently and totally disabled", means the insured's complete inability, after one year of continuous total disability as defined above, to engage in an occupation or employment for which the insured is fitted by reason of his education, training or experience for the remainder of his life.

■ McClure was clearly "permanently and totally disabled" a year after the beginning of his continuous and total disability, when he was forced to retire because he could not continue to be a firefighter, and (as the parties stipulated) his "physical limitations prevent him from working with reasonable continuity in his customary occupation or in any other occupations in which he might reasonably be expected to engage."

## IV

Appellants claim that McClure nevertheless cannot recover because the policy states

that it insures against loss "resulting directly and independently of all other causes from bodily injuries caused by accident." They argue that because McClure had a preexisting back condition, his disability did not result "directly and independently" from the accident.

 Again, state law interpretation of this phrase does not control our inquiry. ERISA requires that courts apply a federal common-law rule, keeping in mind that "the common law decision-making process is inherently incremental in nature ... [and] calls for devising a rule that does not stray too far from the existing regime." *PM Group Life Ins. Co. v. Western Growers Assurance Trust,* 953 F.2d 543, 547 (9th Cir.1992) (citation omitted).

The Fourth Circuit has held that the existence of a preexisting condition does not bar recovery under an ERISA policy unless the preexisting condition "*substantially* contributed to the disability or loss," even when the general policy language limits coverage to losses caused by accidents "directly and independently of all other causes." *Adkins v. Reliance Standard Life Ins. Co.,* 917 F.2d 794, 795, 797 (4th Cir.1990) (quotations omitted) (emphasis added). Without referring to the conspicuousness of the language, the court reasoned that such a limitation, literally construed, would nullify the benefits an insured could expect from a policy in a large number of instances. "[W]ith such a stringent construction, a claimant would have to be in perfect health at the time of his most recent injury before the policy would benefit him...." *Id.* at 796. The application of the Fourth Circuit test "requires a two-pronged analysis, namely: (1) whether there is a preexisting disease, pre-disposition, or susceptibility to injury; and (2) whether this preexisting condition, pre-disposition, or susceptibility substantially contributed to the disability or loss." *Quesinberry v. Life Ins. Co. of N. Am.,* 987 F.2d 1017, 1032 (4th Cir.1993) (en banc).

Construing an ERISA policy which inconspicuously contained similar language limiting coverage to losses caused by "an accidental bodily injury which is a direct result, independent of all other causes" of the accident, the district court for the Central District of California has allowed recovery, adopting as federal common law a test "requir[ing] the plaintiff to show that the accident was the predominant, as opposed to remote, cause of the injury." *Henry v. Home Ins. Co.,* 907 F.Supp. 1392, 1394, 1398 (C.D.Cal.1995) (Tashima, D.J.). The court stated that this test is similar to a proximate cause inquiry. *Id; see, e.g., Carroll v. CUNA Mut. Ins. Soc'y,* 894 P.2d 746, 755 (Colo.1995) ("proximate cause" in this context means "predominant cause"); 1A John A. Appleman & Jean Appleman, *Insurance Law and Practice,* § 362 at pp. 484–85, 490–91 (West 1981) (requirement that accident be "proximate cause" of disability not necessarily same as negligence standard; "The weight of authority is that such terms have no greater meaning that [sic] the usual rule requiring that the injury be a predominant factor in causing the loss.").

*Henry* applied the principle of federal common law under ERISA that "courts will protect the reasonable expectations of ... insureds ... even though a careful examination of the policy provisions indicates that such expectations are contrary to the expressed intention of the insurer." *Saltarelli v. Bob Baker Group Medical Trust,* 35 F.3d 382, 386 (9th Cir.1994) (quotations omitted). In *Saltarelli,* we allowed an insured to recover for his medical expenses relating to a preexisting cancer despite an ERISA policy clause excluding coverage for "pre-existing conditions," finding that the exclusion, buried amid definitions in the policy, "was not clear, plain, and conspicuous enough to negate [a] layman['s] ... objectively reasonable expectations of coverage." *Id.* at 387. *Henry* emphasized that the language limiting coverage to loss caused directly and independently by an accident was "inconspicuously included within the [ERISA plan's] definition of 'injury.'" 907 F.Supp. at 1396. Because the plan "does not prominently indicate that recovery for an accident is to be construed so narrowly ... this phrase is not sufficiently conspicuous to apprise insureds of its impact on the scope of coverage, [and] it denies insureds their reasonable expectations of accident insurance." *Id.* at 1396–97.

In this case, we cannot determine whether the clause in the LINA policy was similarly inconspicuous. The parties did not discuss the manner in which the exclusion appears, nor did they submit a complete copy of the policy to the district court to allow it or us to determine whether the "directly and independently" language was conspicuous or buried in general policy language. This has a bearing on whether the language could defeat McClure's objectively reasonable expectations of coverage. Without that threshhold determination, we cannot decide whether the outcome is controlled by the Fourth Circuit's rule, which is not dependent on the conspicuousness of the exclusionary language, that the preexisting condition bars recovery when it substantially contributed to the disability, or the Central District's more liberal rule applied when the exclusionary language was inconspicuous, that recovery may be had when the accident is the proximate or predominant cause of the disability.

Thus, we hold that if the exclusionary language here in question is conspicuous it would bar recovery if a preexisting condition substantially contributed to the disability. This could result in a denial of recovery even though the claimed injury was the predominant or proximate cause of the disability. On the other hand, we hold that if the language is inconspicuous, a policy holder reasonably would expect coverage if the accident were the predominant or proximate cause of the disability.

▆▆▆ We therefore remand to the district court. Upon remand, the parties should provide a copy of the LINA policy to the district court, so that the court may determine whether the "directly and independently" language appears in such a "clear, plain and conspicuous" manner so as to defeat McClure's otherwise reasonable expectation of coverage. See Saltarelli, 35 F.3d at 387. If, on the one hand, the policy language is not so conspicuous, McClure would reasonably expect coverage and therefore should prevail, because the parties have stipulated that the accident was the proximate cause of McClure's disability. If, on the other hand, the limiting language is conspicuous, we believe that the desirability of a uniform federal common law persuades us to follow the Fourth Circuit test, which reasonably construes the exclusionary language.

Because this case arises from the grant of a summary judgment, the district court, of course, must first decide whether the conspicuousness of the language presents a triable issue of fact whether the "purported exclusion for pre-existing conditions is not conspicuous enough to attract the attention of a reasonable layman." Id. at 385. See Rebel Oil Co. v. Atlantic Richfield Co., 51 F.3d 1421, 1435 (9th Cir.1995)(that issue is factual does not preclude summary judgment; court must assess whether the fact finder could reasonably render verdict in favor of nonmoving party). If there is no triable issue regarding the conspicuousness of the language, the grant or denial of summary judgment may be appropriate. Also, if the exclusionary language is conspicuous, the court must similarly determine if there is a triable issue whether the preexisting condition substantially contributed to McClure's disability.

## V

▆▆▆ McClure requests attorney fees under 29 U.S.C. § 1132(g)(1), which permits a reasonable attorney's fee and costs of action to either party in an action by a participant or beneficiary in an ERISA plan. "A plan participant who prevails in an action to enforce rights under the plan is ordinarily entitled to a reasonable attorney's fee if the participant 'succeed[s] on any significant issue in litigation which achieves some of the benefit ... sought in bringing suit' and if no special circumstances make an award unjust." Barnes v. Independent Auto. Dealers of Cal. Health & Welfare Benefit Plan, 64 F.3d 1389, 1397 (9th Cir.1995) (quoting Losada v. Golden Gate Disposal Co., 950 F.2d 1395, 1401 (9th Cir.1991)). Because we remand to the district court, neither party has yet "prevailed" in this action. McClure's request for fees must await a final determination on the merits. If he prevails on remand, the district court should calculate a reasonable attorney's fee, which includes the fees for bringing the appeal.

REVERSED IN PART AND REMAND-
ED.