BOSTON MUTUAL INSURANCE COMPANY, a Massachusetts corporation, Plaintiff,

v.

Robert W. MURPHREE and Glendyon Sue Murphree, husband and wife, both individually and as natural parents of Susan Elizabeth Murphree, a minor; Unigard Insurance Company, a Washington corporation, Defendants.

UNIGARD INSURANCE COMPANY, a Washington corporation, Plaintiff,

v.

Jennifer ZIMMERMAN, an individual; Linda Zimmerman and Howard Zimmerman, husband and wife, Defendants.

CV. No. 97–372–PHX–DAE.

United States District Court, D. Arizona.

Sept. 4, 1998.

Frederick C. Berry, Jr., Frederick C. Berry Jr., PC, Phoenix, AZ, for Boston Mutual Insurance Company.

Scott A Salmon, O'Connor Cavanagh Anderson, Westover Killingsworth & Beshears, Phoenix, AZ, for Robert W Murphree, Glendyon Sue Murphree.

Rick (Ralph) Neeley Bryson, Teilborg Sanders & Parks PC, Phoenix, AZ, for Unigard Insurance Co.

John A. Micheaels, Beale & Micheaels PC, Phoenix, AZ, for Kemper Insurance Company.

Henry G Hester, Phillips Lyon & Wolf PC, Phoenix, AZ, for Jennifer Zimmerman, Linda Zimmerman.

*ORDER GRANTING DEFENDANTS MURPHREES' MOTION FOR SUMMARY JUDGMENT; AND ORDER DENYING PLAINTIFF BOSTON MUTUAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT*

DAVID ALAN EZRA, District Judge.

The court heard the parties' Motions on August 13, 1998. Frederick C. Berry, Jr., Esq., appeared at the hearing on behalf of Plaintiff; Scott A. Salmon, Esq., appeared at the hearing on behalf of Defendants Robert W. Murphree and Gleyndon Sue Murphree; Henry Hester, Esq., appeared at the hearing on behalf of the Zimmermans; and John Michaels, Esq., appeared at the hearing on behalf of Intervenor Kemper. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS Defendants' Motion for Summary Judgment; and DENIES Plaintiff's Motion for Summary Judgment.

## BACKGROUND

On May 5, 1996, Susan Elizabeth Murphree ("Ms.Murphree") was involved in an automobile accident. The accident occurred as Jamon Kirt Nadeau ("Nadeau") changed lanes. Nadeau's right rear tire collided with the left front bumper of Ms. Murphree's vehicle. Ms. Murphree lost control of her vehicle which went off the roadway and overturned. Ms. Murphree was ejected from the automobile, and was later transported to the hospital with severe injuries.

Ms. Murphree's injuries include fractured vertebra, crushed vertebra, open fractured fibula and tibia, soft tissue loss requiring multiple skin and muscle grafts as well as reconstructive surgeries. The injuries have required significant and ongoing medical care. The cost of the medical care has mostly been covered by Arizona Health Dimensions Benefit Plan ("the Plan"), which is underwritten by Plaintiff Boston Mutual Insurance Company ("Boston").

At the time of the accident Ms. Murphree was also covered under an automobile insurance policy underwritten by Unigard Insurance Company ("Unigard"). The Unigard

policy has limits of $5,000 per person for first party medical payment coverage and $500,000 combined single limits for underinsured motorist coverage. At the time of the accident Nadeau was insured under an automobile policy with liability limits of $100,000. Allstate, Nadeau's insurance carrier, tendered the policy limits to Ms. Murphree.[1]

On February 21, 1997, Boston filed a Complaint seeking to recover the full amount of disbursements it has made for Ms. Murphree's health care. Boston asserts that based upon a coordination of benefits ("COB") provision in the Plan, it is entitled to coordinate with the underinsured motorist benefits of the Unigard insurance policy. Unigard has already tendered the $5,000 medical benefits policy limits from the Unigard auto policy to Ms. Murphree through payment to Scottsdale Memorial Hospital. Unigard has also, by way of interpleader, made the $500,000 in underinsured motorist benefits available to the party who is ultimately determined to have a legal interest therein.

On January 30, 1998, both Boston and Defendants Murphrees filed motions for summary judgment. On February 17, 1998, the Murphrees filed their response to Boston's motion, and on March 16, 1998, Boston filed a consolidated response to the Murphrees' motion and reply to its own Motion. On April 15, 1998, the Murphrees filed their reply to Boston's Motion.

### STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered when:

> ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the initial burden of "identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). The movant must be able to show "the absence of a material and triable issue of fact," *Richards v. Neilsen Freight Lines*, 810 F.2d 898, 902 (9th Cir.1987), although it need not necessarily advance affidavits or similar materials to negate the existence of an issue on which the nonmoving party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. But *cf., id.*, at 328, 106 S.Ct. 2548 (White, J., concurring).

■ If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support his legal theory. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir.1979). The opposing party cannot stand on his pleadings, nor can he simply assert that he will be able to discredit the movant's evidence at trial. *See T.W. Elec.*, 809 F.2d at 630. Similarly, legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Moreover, "if the factual context makes the nonmoving party's claim *implausible*, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir. 1987), (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)) (original emphasis).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds

---

**1.** Defendants submit that Ms. Murphree's claim against Nadeau is worth approximately $2,000,000. Boston did not object to the valuation of her claim at such an amount.

could differ as to the import of the evidence." *Eisenberg*, 815 F.2d at 1289.

■ However, when "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec.*, 809 F.2d at 631. Also, inferences from the facts must be drawn in the light most favorable to the nonmoving party. *Id.* These inferences may be drawn both from underlying facts that are not in dispute, as well as from disputed facts which the judge is required to resolve in favor of the nonmoving party. *Id.*

## DISCUSSION

I. *The Murphrees' Motion for Summary Judgment.*

This dispute essentially revolves around the viability and interpretation of the COB provision in the Plan. The court must first consider whether the Plan underwritten by Boston is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), Arizona state law, or whether the law is generally the same.

■ In title 29 U.S.C. § 1002(1) (West Supp.1998), the term "employee welfare benefit plan" is defined as

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death....

An employee welfare benefit plan established by an employer engaged in commerce is governed by ERISA. The Ninth Circuit, in *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1503–04 (9th Cir.1985), explained that since ERISA does not contain a clear definition of the term "Plan," courts should determine if the facts provided "would enable a reason-

able person to ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." (internal quotations and citations omitted).

■ The Plan provided by Boston is an employee welfare benefit plan under ERISA. Defendant Robert Murphree is the President of American Institute of Technology ("AIT"). AIT employs approximately 32 full-time and part-time employees. AIT provides insurance, the Plan, to its employees as part of a benefits package. Thus, since AIT provides its employees health benefits through the Plan, and Defendant Robert Murphree received such benefits as an employee of AIT, a reasonable person would conclude that the Plan is an employee welfare benefit plan as defined under ERISA.

The next issue is whether ERISA preempts state laws as they apply to the COB clause in this Plan in particular.[2] First, the court notes that ERISA specifically and broadly preempts state laws "as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title...." 29 U.S.C. § 1144(a) (West 1985); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (explaining that the preemptive scope is intended to be applied in the broadest sense). In demarcating the ERISA preemption line, the Ninth Circuit has held that four types of state laws "relate to" ERISA plans and are therefore preempted:

> 1) laws that regulate the type of benefits or terms of ERISA plans, 2) laws that create reporting, disclosure, funding, or vesting requirements, 3) laws that provide rules for calculations of the amount of benefits to be paid under ERISA plans, and 4) laws that provide remedies for misconduct growing out of the administration of ERISA plans.

*Martori Bros. Distributors v. James–Massengale*, 781 F.2d 1349, 1356–57 (9th Cir. 1986). The legislative history behind the preemption clause makes it clear that Congress intended to supplant all state regulation of employee benefit plans with a uniform

---

2. For purposes of this section "State law" includes "all laws, decisions, rules, regulations, or

other State action having the effect of law, of any State." 29 U.S.C. § 1144(c) (West 1985).

federal system. *See Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 99, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (preemption to eliminate threat of conflicting state and local regulations).

■ The fact that a state law may have been enacted to further ERISA's underlying purposes "is not enough to save the state law from pre-emption." *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 829, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). The preemption clause "was intended to displace all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements." *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).

Significantly, there is no competing federal and state law regarding the viability of COB provisions. Both federal and state law recognize their validity and enforceability. Thus, despite the fact that the Plan is governed by ERISA, the court need not focus on the issue of preemption, and need only consider the specific language of the instant COB provision, and its applicability to the facts of this case.

The COB provision in the Plan in pertinent part provides:

We use the rules of this provision to determine the medical benefits of this Plan in any claim determination period if the Covered Person is also covered by one or more other Plans at the same time. *Plan* means:

1. Any group insurance or group type policy whether insured or uninsured. Any automobile policy individual or group; this includes:

.    .    .    .    .

e. any mandatory automobile reparations insurance (no-fault) providing benefits under a medical expense reimbursement provision for hospital, medical, dental or other health care services and treatment because of accidental bodily injuries arising out of a motor vehicle accident, and any other medical and disability benefits received under any automobile policy where and to the extent that coordination of such benefits is permitted by

law. We will pay excess or coordinate if the No–Fault Policy has a Coordination Provision.

Defendants' Statement of Facts at ¶ 9. Boston argues that this provision requires coordination of benefits between the Plan and the underinsured motorist benefits provided under the Unigard policy. Therefore, the central issue is whether the COB provision is applicable to benefits received from the underinsured motorist portion of the automobile policy.

■ COB provisions resolve disputes between insurance companies when two insurance companies provide coverage for the same claim. Essentially, a COB provision ensures that there is no duplication of benefits if two insurance policies are implicated. *See PM Group,* 953 F.2d at 546. Since ERISA does not specifically address how COB clauses are to be interpreted, federal courts are expected to develop federal common law to fill the gaps in the statutory mandate. *See Pilot Life,* 481 U.S. at 56, 107 S.Ct. 1549. In developing the federal common law, courts may adopt the law of the state in which it sits, or adopt a federal rule. *See PM Group,* 953 F.2d at 546. The rule that is developed must "best comport[ ] with the interests served by ERISA's regulatory scheme." *Id.*

■ With regard to interpretation of insurance contracts, even those governed by ERISA, both Ninth Circuit and Arizona law look to the reasonable expectations of the parties. *See Saltarelli v. Bob Baker Group Medical Trust,* 35 F.3d 382, 387 (9th Cir. 1994) ("We hereby adopt the doctrine of reasonable expectations as a principle of the uniform federal common law informing interpretation of ERISA-governed insurance contracts."); *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.,* 682 P.2d 388, 395, 140 Ariz. 383 (1984) (en banc) (applying the reasonable expectations doctrine to interpretation of insurance contracts). Additionally, any ambiguities in the ERISA plan must be construed against the drafter, and in favor of the insured. *See Barnes v. Independent Auto. Dealers,* 64 F.3d 1389, 1393 (9th Cir.1995). Consequently, in interpreting the COB provision at issue here, the court will

rely upon the interpretative scheme established with regard to ERISA plans generally.

The COB provision initially provides for coordination with "[a]ny automobile policy." Thereafter, in subsection (e), the Plan specifies the type of automobile policy with which coordination is appropriate. It is clear that the Plan only intended to coordinate with automobile benefits provided for "hospital, medical, dental or other health care services, ... and any other medical and disability benefits[.]" However, despite the arguments submitted by Boston, it is not clear that the Plan was intended to coordinate with underinsured motorist payments made from "any automobile policy." It appears that the COB provision was solely intended to coordinate with the portions of the policy which provide no-fault medical benefits. For example, the first sentence of subsection (e) clarifies that "any automobile policy" includes "any mandatory automobile reparations insurance (no-fault) ...." Moreover, the final sentence of subsection (e) explains that "[w]e will pay excess or coordinate if the *No–Fault* Policy has a Coordination Provision." (emphasis added).

■ Subsection (e) is unfortunately not as straightforward as it could be. While subsection (e) purports to refer to "any automobile policy," the language used, and the manner in which the subsection is worded gives the impression that only medical benefits from "no fault" automobile portions of the policy will be coordinated with the benefits provided by the Plan. Hence, given the language of the COB clause, and the focus in subsection (e) on "no-fault" policies, it appears that the Plan was written to coordinate solely with the no-fault coverage of an automobile policy, and not the fault-based coverage, such as that provided by uninsured and underinsured motorist portions of the policy.

■ Underinsured motorist coverage is allocated on the basis of fault. The insured is only entitled to the funds if the "offending motorist" does not have enough insurance to pay for the damages sustained by the insured, the injured party. *See* Black's Law Dictionary 1526 (6th ed.1990) ("[underinsured motorist coverage] is not designed to relieve an insured or his family from the failure to purchase adequate liability coverage.").

Thus, the benefits provided in the underinsured motorist portion of the Unigard policy are fundamentally different from the benefits provided under the first party medical benefits portion of the policy.

■ Boston's argument that it is entitled to the benefits from the underinsured motorist provisions of the policy leads the court to the conclusion that Boston is attempting to achieve subrogation, simply by another name. Subrogation requires an insured to assign to its insurer the insured's interest in any action against the tortfeasor. *See Barnes* 64 F.3d at 1392. Boston argues that it has not sought to recover any interest in the Murphrees' claim against the offending party, and thus, the COB provision here is not akin to a subrogation clause. Boston is correct that the language of the COB provision is distinct from a subrogation clause, however, the manner in which Boston is attempting to enforce it is not.

■ In essence, Boston is attempting to recover from a claim by the injured party against the offending party. Underinsured motorist coverage is based upon a claim against the tortfeasor that his insurance will not pay because it's coverage is exhausted. The only way to obtain benefits under the underinsured motorist portion of the policy is to demonstrate that the money should have been, and will not be, paid by the tortfeasor. Hence, while the COB provision does not on its face operate as a subrogation agreement, the manner in which Boston is attempting to enforce it changes its very nature.

First, the ambiguous language of the COB provision must be interpreted against Boston, the drafter of the ERISA Plan. The fact that the provision appears to apply and focuses on no-fault automobile policies and not the underinsured motorist portions of the policies is ambiguous. A review of the provision leads the reader to believe that the Plan will coordinate only with medical and disability benefits paid under the provisions of the no-fault policy. Second, the provision must be given an objectively reasonable interpretation, with the insured's expectations kept in mind. Given that the COB provision does not mention or refer to the underinsured motorist coverage offered by automobile poli-

cies, and only discusses medical and disability benefits paid by the policies, it is objectively reasonable that the insured expected that the Plan would only coordinate with benefits paid under the first-party medical benefits portion of any automobile policy.

Moreover, Boston's contention that it is entitled to a dollar for dollar recovery from the $500,000 underinsured motorist payment, is untenable. As discussed above, Boston's interpretation of the COB would essentially allow for subrogation. Since the COB provision was not intended to be a subrogation clause, the court must construe the language of the COB provision against Boston, and interpret the provision in conjunction with the objective reasonable expectation of the parties. The medical benefits received under the first-party no-fault provisions of the Unigard policy amount to $5,000. These medical benefits, which have already been tendered for payment of medical expenses, are provided regardless of how fault is allocated in the event of an accident. Therefore, as coordination with these benefits has already occurred, without clear language to the contrary, Boston has already coordinated benefits with the portion of the Unigard policy that it is entitled to. For these reasons, the Murphrees' Motion for Summary Judgment is GRANTED.

II. *Boston's Motion for Summary Judgment.*

Boston moves for summary judgment on the same issues that the court addressed above. For the reasons discussed, Boston's Motion for Summary Judgment is DENIED.

Despite the court's findings above, a review of Boston's remaining arguments demonstrates that even if this court found in its favor on the issues already addressed, it has failed to meet its burden on summary judgment. Significantly, although both parties moved for summary judgment, neither party indicated that any triable issues of fact exist.[3] As explained at the hearing, since it is Bos-

ton's contention that it is entitled to a portion of the money from the underinsured motorist coverage, it has the burden of demonstrating that some of the $500,000 paid by Unigard was allocated to medical benefits. It cannot merely ask the court to assume that a portion of the $500,000 was intended to cover the medical expenses. Moreover, Boston is not requesting a percentage of its outlay, it asserts that it is entitled to complete recovery of the medical expenses it advanced for Ms. Murphree. That is an amount in excess of $300,000.

Consequently, to meet its burden on summary judgment Boston is required to show that as a matter of law it is entitled to a dollar for dollar recovery from the underinsured motorist proceeds, because the money paid by Unigard was intended to cover all of the medical expenses paid by Boston. It has not carried its burden. Boston failed to produce any evidence that even a portion of the underinsured motorist proceeds were paid for medical expenses. Thus, even if the court were to agree with Boston on the arguments addressed above, the court would still be compelled to deny its Motion as it has failed to meet its burden of demonstrating that it is entitled to the funds as a matter of law. Hence, Boston's Motion for Summary Judgment is DENIED.

*CONCLUSION*

For the reasons stated above, the court GRANTS the Murphrees' Motion for Summary Judgment, and DENIES Boston's Motion for Summary Judgment.

IT IS SO ORDERED.

---

**3.** The court notes that in its papers Boston never argued that a triable issue of fact exists in this case. It concluded that it is entitled to summary judgment as a matter of law. However, at oral argument, Boston's counsel changed its position and argued that there is a triable issue of fact as to how the money paid pursuant to the underin- sured motorist coverage was allocated by Unigard. In essence, Boston now argues that some of the $500,000 was paid for medical benefits and a jury should be empaneled to determine how much. There was no evidence presented at the hearing, merely argument from counsel.