**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MUSHEGH MINASYAN,

*Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney General,

*Respondent.*

No. 06-73192

Agency No.
A095-299-283

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
August 6, 2008—Pasadena, California

Filed January 20, 2009

Before: Stephen Reinhardt Circuit Judge, Roger J. Miner,*
Senior Circuit Judge, and Marsha S. Berzon, Circuit Judge.

Opinion by Judge Berzon

*The Honorable Roger J. Miner, Senior United States Circuit Judge for
the Second Circuit, sitting by designation.

---

**COUNSEL**

Shawn Sedaghat, Hollywood, California, for the petitioner.

Peter D. Keisler, Assistant Attorney General; Anh-Thu Mai, Senior Litigation Counsel; Peter H. Matson, DOJ Attorney; Margaret O'Donnell (argued), DOJ Attorney, Washington, DC, for the respondent.

---

**OPINION**

BERZON, Circuit Judge:

An alien seeking asylum must, with some exceptions, "demonstrate[ ] by clear and convincing evidence that the application [for asylum] has been filed within one year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). Mushegh Minasyan arrived in the United States from Armenia on April 9, 2001, and filed an application for asylum on April 9, 2002. Our question is whether his application was timely. The answer depends upon when the "one year" referred to in the statute begins and when it ends.

The Board of Immigration Appeals ("BIA") held that the critical year began the day Minasyan arrived and so ended on April 8, 2002, the day before he filed his application, leaving him out of luck by one day. We disagree. The statute is perfectly clear that the "year" upon which Minasyan's asylum

prospects depend began a day later than the BIA thought. That all-important day's reprieve makes Minasyan's asylum application timely rather than untimely. We therefore grant Minasyan's petition and remand to the Board for consideration of the merits of his asylum claim.

## FACTS & PROCEDURAL HISTORY

Minasyan was admitted to the United States as a non-immigrant visitor for pleasure on April 9, 2001, with authorization to remain in the country until October 8, 2001. Minasyan overstayed his visa and, on April 9, 2002, filed an application for asylum, alleging that he was persecuted by Armenian officials on account of his political opinion.[1] Specifically, Minasyan claimed to have been beaten on several occasions for speaking out against government corruption. As Minasyan described one of the incidents, he was kidnapped by two men in military uniforms, held in a basement for two days, and repeatedly struck in his face and kidneys. He remained in bed for almost a month, lost his job, and decided to visit relatives in the United States to "come out of the shock and nightmare [he] was in." After hearing that men in military uniform continued to come to his house after he left Armenia and kidnapped his wife, he decided to apply for asylum.

The Immigration and Naturalization Service[2] ("INS")

---

[1]Minasyan's asylum application was deemed "filed" on April 9, 2002, by virtue of the agency's "mailbox rule," which provides that "[i]n a case in which the application has not been received by the Service within 1 year from the applicant's date of entry into the United States, but the applicant provides clear and convincing documentary evidence of mailing the application within the 1-year period, the mailing date shall be considered the filing date." 8 C.F.R. § 208.4(a)(2)(ii). In this case, Minasyan provided the immigration judge ("IJ") with an express mail receipt indicating that he mailed his application on April 9, 2002. Both the IJ and the BIA found on that basis that Minasyan filed his application on April 9, 2002.

[2]As of March 1, 2003, the INS no longer exists, and its functions have been transferred to the Department of Homeland Security. *See* Homeland

denied Minasyan's application as untimely, finding that he had failed to apply for asylum within the one-year period provided by statute.[3] *See* 8 U.S.C. § 1158(a)(2)(B). The INS then issued a Notice to Appear and initiated removal proceedings.

During proceedings before the IJ, Minasyan admitted the factual allegations against him and conceded removability but sought asylum.[4] Although the IJ found Minasyan "very credible," she denied relief on the asylum claim, concluding that "[Minasyan] unfortunately is not statutorily eligible for asylum" because he did not file his application within one year of arrival. The IJ calculated the one-year period as extending "from April 9, 2001, . . . [to] April 8, 2002," rendering his application "one day over . . . the statutory deadline."

Minasyan timely filed a motion to reconsider, urging the IJ either to reopen his proceedings or to grant his request for asylum in light of this court's decision in *Lagandaon v. Ashcroft*, 383 F.3d 983 (9th Cir. 2004), which addressed the proper calculation of a "year" under a different section of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1229b(b)(1), concerning an alien's continuous physical presence in the country. The IJ denied the motion to reconsider, noting that *Lagandaon* defined one year's presence as running from "one date to the *prior* date in the next year," or "the equivalent of the period from January 1 to December 31, and *not* that from January 1 to the next January 1." 383 F.3d at 992 (emphasis in original). The IJ concluded that while she

---

Security Act of 2002, Pub. L. 107-296, § 471, 116 Stat. 2135. We nonetheless refer to the INS in this opinion, as it was the agency involved in Minasyan's removal proceedings.

[3]Although the INS should have considered Minasyan's application "filed" on April 9, 2002, *see supra* note 1, its referral notice erroneously stated that Minasyan had filed his application for asylum on April 10, 2002, the date the INS received his application.

[4]As we explain later, Minasyan also sought withholding of removal and relief under the Convention Against Torture ("CAT"), but those claims are not properly before us.

was "sympathetic to [Minasyan's] situation," *Lagandaon*'s definition of a "year" simply reaffirmed her previous conclusion that Minasyan's application for asylum was untimely.

Minasyan appealed the IJ's denial of his motion to reconsider to the BIA, arguing that the IJ "failed to adequately calculate the time period for filing his [asylum] application." The BIA denied his appeal, holding that his application was untimely because "he did not mail his asylum application until April 9, 2002, which is one year and one day after his arrival in the United States." Echoing the IJ, the BIA reasoned that *Lagandaon* "clearly stated that a year runs from one date to the *prior* date in the next year, *i.e.*, from January 1 to December 31," meaning that Minasyan's one-year period to file for asylum expired on April 8, 2002. Minasyan timely petitioned this court for review.

## DISCUSSION

We review the denial of a motion for reconsideration for abuse of discretion. *Cano-Merida v. INS*, 311 F.3d 960, 964 (9th Cir. 2002). The BIA abuses its discretion if its decision "is 'arbitrary, irrational, or contrary to law.' " *Singh v. INS*, 295 F.3d 1037, 1039 (9th Cir. 2002) (quoting *Ahwazi v. INS*, 751 F.2d 1120, 1122 (9th Cir. 1985)). Where, as here, the BIA bases its decision on a "purely legal question[ ] concerning the meaning of the immigration laws," we review the BIA's decision *de novo*. *Lagandaon*, 383 F.3d at 987.

**[1]** We conclude that the BIA abused its discretion in this case, as its interpretation of the one-year period for filing an asylum application runs directly counter to the plain meaning of the statute. Section 208 of the INA provides that an alien seeking asylum must demonstrate "by clear and convincing evidence that the application has been filed *within one year after the date* of the alien's arrival in the United States."[5] 8

---

[5]The INA also provides certain exceptions to the one-year filing period "if the alien demonstrates to the satisfaction of the Attorney General either

U.S.C. § 1158(a)(2)(B) (emphasis added). The parties agree that Minasyan arrived in the United States on April 9, 2001. He was therefore required to file an application for asylum within one year *after* that date — that is, not counting that date. The first day of the one-year filing period was thus April 10, 2001, meaning that the application filed by Minasyan on April 9, 2002 — the 365th day *after* April 9, 2001 — was timely.

This reading of the statutory text accords with common legal usage. Both the Federal Rules of Civil and Appellate Procedure use a similar "within *x* days after" formulation to establish filing deadlines for federal litigants. *See, e.g.*, FED. R. CIV. P. 12(a)(1)(A)(i) ("A defendant must serve an answer within 20 days after being served with the summons and complaint."); FED. R. APP. P. 4(a)(1)(A) ("[T]he notice of appeal . . . must be filed with the district clerk within 30 days after the judgment or order appealed from is entered."). Both sets of Rules also specify that, when "computing any period of time specified in these rules or in any local rule, court order, or applicable statute exclude the day of the act, event, or default that begins the period." FED. R. APP. P. 26(a)(1); *see also* FED. R. CIV. P. 6(a)(1). If a defendant was served with a summons and complaint on April 9th and the Rules provided him with 20 days after that date to serve an answer, for example, the parties would understand that the answer was due on April 29th — the twentieth day after April 9th, with April 9th itself excluded from that count. Similarly, if a defendant was served with a summons and complaint on April 9th and the Rules provided him with one year after that date to

---

the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application." 8 U.S.C. § 1158(a)(2)(D). Because we hold that Minasyan timely filed his application for asylum within the one-year provided by § 1158(a)(2)(B), we need not reach his alternative claim that "extraordinary circumstances" justified an exception to the one-year rule under § 1158(a)(2)(D).

serve an answer, the parties would understand that the answer was due on April 9th of the following year — the 365th day after April 9th, with the date of service excluded from that count. The Government has not provided us with any reason to calculate the statutory deadline for filing an asylum application differently.

Our decision in *Lagandaon* is not only not to the contrary, but in fact supports our conclusion. *Lagandaon* addressed the separate question "whether the period beginning May 14, 1987, and ending May 13, 1997," constituted "a continuous period of not less than 10 years" for purposes of cancellation of removal under 8 U.S.C. § 1229b(b)(1).[6] 383 F.3d at 986. We held that it did, because "a year runs from one date to the *prior* date in the next year — 365 days, the equivalent of the period from January 1 to December 31." *Id.* at 992.

**[2]** In *Lagandaon*, the date upon which the statutory time period *began* to run was not at issue. The statute did not use the "within *x* days after" formulation to specify that the date of arrival was to be left out of the calculation, and the parties agreed that ten years of continuous presence began on the day that Lagandaon arrived in the country. *See id.* In Minasyan's case, by contrast, the statute specifically provides that the one-year period for filing an asylum application commences *after* the date of arrival, meaning that his date of arrival does not count as "day one" for purposes of the filing deadline. This difference in the statutory language makes perfect sense, as the year-long periods serve different purposes — in the continuous presence context, to measure the length of an alien's connection to this country; in the various time deadline

---

[6] 8 U.S.C. § 1229b(b)(1) provides: "The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application . . ."

contexts, to give an individual a certain clearly calculable amount of time to accomplish a certain task.

At the same time, we do apply here *Lagandaon*'s common-sense conclusion that one year equals 365 days, the "one year" in this case extending from April 10, 2001, to April 9, 2002. Were we instead to have accepted the INS's position in *Lagandaon*, Minasyan's deadline would have been April 10, 2002, and he would have had a day to spare. Instead, he barely squeezed in under the wire.

In short, our decision in *Lagandaon* simply does not address the question of when a one-year statutory filing deadline *begins* to run, particularly when it is specified as beginning the day "after" the event that triggers the deadline.[7] Both the IJ and the BIA mistook the plain meaning of the statute by including Minasyan's date of arrival in their calculation of the one-year period for filing asylum claims. Nothing in *Lagandaon* supports that miscalculation. To the contrary, once "day one" of the filing period is properly established as April 10, 2001, *Lagandaon*'s definition of a year as running "from one date to the *prior* date in the next year" confirms that Minasyan's application, filed on April 9, 2002, was just on time.

**[3]** Minasyan also petitions this court for review of his claims for withholding of removal and CAT relief. He admits, however, that he did not appeal the IJ's order of removal and denial of relief to the BIA, opting instead to file a motion for reconsideration limited to the timeliness of his asylum claim and failing to raise any withholding or CAT issues. In the

---

[7]Indeed, *Lagandaon* carefully noted that although "[t]raditionally, the first day is included in reckoning a specific period of time," 383 F.3d at 992, "we do exclude the date of an event from the calculation of a period of time running from that event . . . when the relevant rule explicitly so states," *id.* at 992 n.11. To illustrate this point we cited the Federal Rules of Civil Procedure, which, as noted above, utilize the same "within *x* days after" formulation as § 1158(a)(2)(B). *See id.* at 992 n.11.

absence of an appeal to the BIA, the IJ's removal order of November 15, 2004, became "final" on December 14, 2004, thirty days after the IJ's decision. *See* 8 C.F.R. §§ 1003.38-.39, 1240.14-.15; *see also* 8 U.S.C. § 1101(a)(47)(B). Minasyan then had thirty days to petition this court for review, *see* 8 U.S.C. § 1252(b)(1), but his petition was not received until June 22, 2006. Thus, setting aside the Government's separate argument that Minasyan failed to exhaust his claims for withholding of removal and CAT relief before the BIA, his petition for review of the withholding and CAT claims for relief was untimely. We therefore lack jurisdiction over those claims.

**[4]** Minasyan also urges this court to remand his claims to the BIA with instructions to reopen proceedings *sua sponte*, but this request is precluded by our decision in *Ekimian v. INS*, 303 F.3d 1153 (9th Cir. 2002), which held that this court "do[es] not have jurisdiction to review [an alien's] claim that the BIA should have exercised its *sua sponte* power" to reopen or reconsider a prior order. *See id.* at 1159.

We therefore GRANT the petition for review with respect to the asylum issue only and REMAND to the agency for further proceedings as to that issue.