**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ANDRE LEGRAS,<br>　　　　*Plaintiff-Appellant*,<br><br>　　　　v.<br><br>AETNA LIFE INSURANCE COMPANY;<br>FEDERAL EXPRESS CORPORATION<br>LONG TERM DISABILITY PLAN,<br>　　　　*Defendants-Appellees*. | No. 12-56541<br><br>D.C. No.<br>2:12-cv-02128-<br>R-JCG<br><br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted
March 7, 2014—Pasadena, California

Filed May 28, 2015

Before: Harry Pregerson, Richard A. Paez,
and N. Randy Smith, Circuit Judges.

Opinion by Judge Paez;
Dissent by Judge N.R. Smith

## SUMMARY[*]

### ERISA

The panel reversed the district court's dismissal of an action challenging the denial of an application for continued long-term disability benefits under the Employee Retirement Income Security Act.

The panel held that the district court erred in dismissing the action for failure to exhaust administrative remedies. The plaintiff's internal appeal from the denial of his benefits application was denied as untimely under a 180-day appeal period. The panel held that the plaintiffs' notice of internal appeal was timely because it was filed on the Monday after the Saturday on which the 180-day period ended. The panel adopted this method of counting time as part of ERISA's federal common law.

Dissenting, Judge N.R. Smith wrote that as a matter of contract interpretation, the plaintiff's administrative appeal was untimely.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Peter S. Sessions (argued) and Glenn R. Kantor, Kantor & Kantor LLP, Northridge, California, for Plaintiff-Appellant.

David P. Knox (argued), Federal Express Corporation, Memphis, Tennessee, for Defendants-Appellees.

---

**OPINION**

PAEZ, Circuit Judge:

Andre LeGras appeals the district court's judgment in favor of Defendants Federal Express Corporation Long Term Disability Plan and AETNA Life Insurance Company (collectively, "AETNA"). In a letter denying LeGras's application for continued long-term disability benefits, AETNA informed LeGras that he could file an internal appeal of the decision within 180 days. The 180-day period ended on a Saturday. Although LeGras mailed his appeal the following Monday, AETNA denied it as untimely. The district court dismissed LeGras's action for failure to exhaust administrative remedies. We reverse. We hold that because the last day of the appeal period fell on a Saturday, neither that day nor Sunday count in the computation of the 180 days. As LeGras mailed his notice of appeal on Monday, it was timely. This method of counting time is widely recognized and furthers the goals and purposes of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. We therefore adopt it as part of ERISA's federal common law.

## I.

In October 2008, LeGras seriously injured himself while working as a ramp transport driver for Federal Express Corporation ("FedEx"), a job he had held for twenty-three years. LeGras suffered a serious back injury that caused severe and sustained pain. Subsequent surgeries did not correct the problem. As an employee of FedEx, LeGras was a participant and beneficiary of FedEx's Long Term Disability Plan ("LTD Plan" or "Plan"). In May 2009, he began receiving disability benefits under the Plan. Subsequently, AETNA, the Plan's Claims Paying Administrator, informed LeGras that his benefits would terminate on May 24, 2011, unless he could establish that his disability qualified as a "total disability" under the LTD Plan.

After LeGras attempted to make the required showing, AETNA sent LeGras a letter explaining that the evidence he submitted did not establish that he suffered from a total disability. Of concern to AETNA was LeGras's alleged failure to prove that he could not "sit or use [his] upper extremities for sedentary work." LeGras received the letter at 1:23 p.m. on April 18, 2011. The letter stated, "[i]f you disagree with the above determination, in whole or in part, you may file a request to appeal this decision within 180 days of receipt of this notice."

The parties agree that the 180-day appeal period expired on October 15, 2011, a Saturday. LeGras mailed his appeal the following Monday. On January 17, 2012, AETNA denied LeGras's appeal as untimely. LeGras filed an action in the district court pursuant to 29 U.S.C. § 1132, the civil enforcement provision of ERISA. After answering the complaint, AETNA filed a motion for judgment on the

pleadings under Federal Rule of Civil Procedure 12(c). AETNA argued that LeGras failed to exhaust his administrative remedies because he mailed his appeal after the 180-day period specified in the April 18, 2011 denial letter lapsed. The district court granted the motion and entered judgment in favor of AETNA.[1]

LeGras timely appealed.[2]

## II.

We review de novo an order granting a motion for judgment on the pleadings under Rule 12(c). *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). We accept the factual allegations in the complaint as true, and view them in a light most favorable to the plaintiff. *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1301 & n.2 (9th Cir. 1992).

The federal statute governing claims procedures under ERISA requires that "in accordance with regulations of the Secretary [of Labor], every employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying

---

[1] ERISA itself does not require a participant or beneficiary to exhaust his administrative remedies before bringing an action under ERISA's civil enforcement provision. *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008). Nonetheless, we have imposed a prudential exhaustion requirement. *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980); *Vaught*, 546 F.3d at 626 n.2 (clarifying that the exhaustion requirement in cases under ERISA's civil enforcement provision are prudential, not jurisdictional).

[2] We have jurisdiction pursuant to 28 U.S.C. § 1291.

the claim." 29 U.S.C. § 1133(2). The regulation implementing 29 U.S.C. § 1133 states that a "reasonable opportunity for a full and fair review" is "at least 180 days following receipt of a notification of an adverse benefit determination within which to appeal . . . ." 29 C.F.R. § 2560.503-1(h)(3), (h)(3)(i), (h)(4). Neither the governing statute, nor the implementing regulation, "specify a method of computing time."[3] *Cf.* Fed. R. Civ. P. 6(a). This leaves a number of unresolved ambiguities. For instance, did the 180 days begin on April 18, 2011, the day LeGras received the notice, or on the following day? Does the final day end at 1:23 p.m., 5:00 p.m., or midnight? And, as is relevant here, if the final day lands on a weekend or holiday, is the participant permitted to file his appeal on the next business day? The widespread understanding that a deadline falling on a Saturday, Sunday, or holiday extends to the next business day answers this question.

Congress, in enacting ERISA, has "empowered the courts to develop, in light of reason and experience, a body of federal common law governing employee benefit plans." *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1499. (9th Cir. 1984). This federal common law "supplement[s] the explicit provisions and general policies set out in ERISA . . . governed by the federal policies at issue." *Id.* at 1500. One of ERISA's declared policies is to "protect the interest of [plan] participants" and to provide "adequate safeguards . . . [that are] desirable in the interests of employees." 29 U.S.C. § 1001. Indeed, we have repeatedly stated that ERISA is remedial legislation that should be

---

[3] Similarly, the parties do not suggest that the LTD Plan contains an explanation of how the appeal period is to be computed. We therefore assume that it does not contain such a provision.

construed liberally to "protect[] participants in employee benefits plans." *McElwaine v. US West, Inc.*, 176 F.3d 1167, 1172 (9th Cir. 1999); *Batchelor v. Oak Hill Med. Grp.*, 870 F.2d 1446, 1449 (9th Cir. 1989); *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir. 1984).

We have developed ERISA federal common law furthering these interests several times before. *See, e.g.*, *Security Life Ins. Co. of America v. Meyling*, 146 F.3d 1184, 1191 (9th Cir. 1998) (recognizing under ERISA federal common law that a recission remedy exists when an insured makes material false representations about his health); *Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956 (9th Cir. 2001) (invoking federal common law to incorporate the mailbox rule into ERISA). For example, we adopted the doctrine of reasonable expectations as a principle to apply when interpreting ERISA-governed insurance contracts. *Saltarelli v. Bob Baker Grp. Med. Trust*, 35 F.3d 382 (9th Cir. 1994). In so holding, we reasoned that "protecting the reasonable expectations of insureds appropriately serves the federal policies underlying ERISA." *Id.* at 386. Further, express incorporation of the principle elsewhere demonstrated "its widespread acceptance and vitality." *Id.* at 387.[4]

There is nothing novel about the principle we adopt here that when a deadline falls on a weekend, it extends to the

---

[4] The dissent argues that we have extended the holding of *Saltarelli* to "read an insured's 'reasonable expectations' into any term of an ERISA plan without limits." Dissent at 19. Contrary to the dissent's argument, we do nothing more than cite *Saltarelli* as an example of incorporating a widely accepted principle—the reasonable expectations doctrine—as part of ERISA's federal common law.

following business day. The Supreme Court recognized this general understanding in 1890. *Street v. United States*, 133 U.S. 299, 306 (1890) ("... a power that may be exercised up to and including a given day of the month may generally, when that day happens to be Sunday, be exercised on the succeeding day"). Further, the Fifth Circuit has stated that this "rubric has universal acceptance." *Armstrong v. Tisch*, 835 F.2d 1139, 1140 (5th Cir. 1988). LeGras faces the possibility of losing his long-term disability benefits because of a two-day difference in the computation of the time period to pursue an administrative appeal. Although the stricter time-computation method may be convenient for AETNA's purposes, it would be contrary to the purposes of ERISA to adopt a method that is decidedly protective of plan administrators, not plan participants.

Further, that a deadline extends to the next business day when it falls on a Saturday, Sunday, or holiday is widespread. For example, Federal Rule of Civil Procedure 6 ("Rule 6") states that this principle applies to "any local rule or court order, or in any statute that does not specify a method of computing time."[5]    Fed. R. Civ. P. 6(a).[6]    We have

---

[5] The relevant part of Rule 6(a)(1)(C) provides as follows:

> When the period is stated in days or a longer unit of time: . . . include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

[6] In addition to his federal common law argument, LeGras argued that Rule 6(a) should apply directly. However, because LeGras presented two alternative arguments that could warrant reversal, we need not address that argument. Further, even though LeGras did not make a federal common law argument in district court, he is permitted to make that argument on

consistently applied Rule 6 when interpreting time periods in various statutory contexts. *See, e.g.*, *Minasyan v. Mukasey*, 553 F.3d 1224, 1227–28 (9th Cir. 2009) (addressing the beginning of the one-year period of limitations for filing an asylum application); *Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1125–26 (9th Cir. 2007) (addressing the timeliness of a Title VII action after receipt of a right-to-sue letter from the Equal Employment Opportunity Commission); *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (addressing the "appropriate ending" of the one-year grace period under the Anti-terrorism and Effective Death Penalty Act of 1996); *Cooper v. City of Ashland*, 871 F.2d 104, 105 (9th Cir. 1989) (per curiam) (holding that because the last day of Oregon's two-year statute of limitations in a personal injury suit under 42 U.S.C. § 1983 ended on the Saturday preceding Columbus Day, the plaintiff could file on the following Tuesday); *Hart v. United States*, 817 F.2d 78, 80 (9th Cir. 1987) (holding that where the last day of the six-month limitations period under the Federal Tort Claims Act ended on a Saturday, the plaintiff could file on the following Monday). Additionally, many regulations explicitly incorporate this method for computing time.[7]

---

appeal because he properly preserved his claim. *See Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995) ("Our traditional rule is that once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below.") (internal quotation marks and brackets omitted).

[7] *See, e.g.*, 15 C.F.R. §§ 280.206(e) (expressly computing time such that, if the last day is a Saturday, Sunday, or legal holiday, the period runs until the end of the next day that is not a Saturday, Sunday, or legal holiday), 719.8(e) (same), 766.5(e) (same), 785.6(e) (same); 17 C.F.R. § 171.4(a) (same); 22 C.F.R. § 103.8(c) (same); 30 C.F.R. § 700.15(b) (same); 38 C.F.R. § 42.27(a) (same); 29 C.F.R. § 2200.2(b) (applying the Federal Rules of Civil Procedure, which includes Rule 6(a), where no specific

Incorporating this time-computation method into ERISA's federal common law protects the interests of insureds, thereby effectuating the policy goals of ERISA. Further, the concept is generally accepted and vital. *See Saltarelli*, 35 F.3d at 387. Therefore, we hold that, where the deadline for an internal administrative appeal under an ERISA-governed insurance contract falls on a Saturday, Sunday, or legal holiday, the period continues to run until the next day that is not a Saturday, Sunday, or legal holiday.

AETNA attempts to skirt the issue by minimizing the role that ERISA plays in our analysis of this case. It argues that LeGras's "appeal was pursuant to the . . . Plan—not ERISA or any ERISA regulation." In other words, AETNA contends that we should not apply the above time-computation method because the 180-day period for appeal is set by contract, rather than by statute or regulation. What AETNA overlooks is that the 180-day appeal period is part of ERISA's mandatory claims processing standards. As noted above, under ERISA's implementing regulations, the minimum amount of time that must be afforded to a claimant to file an administrative appeal is 180 days. 29 C.F.R. § 2560.503-1(h)(3), (h)(3)(i), (h)(4). Although the 180-day appeal period is imposed by the Plan, the Plan is ultimately governed by ERISA. Any ambiguity in calculating the 180 days should be resolved to further the purposes and goals of ERISA.

As support for its position that the LTD Plan is a private contractual arrangement and therefore should not be subject to the time-computation method we adopt, AETNA relies

---

provision exists); 40 C.F.R. § 304.12 (applying the time-computation manner as described in Rule 6(a)); 45 C.F.R. § 1630.13(a) (same); 49 C.F.R. § 240.7 (applying the time-computation provisions of Rule 6).

heavily upon a Fifth Circuit case, *Jones v. Georgia Pacific Corp.*, 90 F.3d 114 (5th Cir. 1996). In *Jones*, a decedent's heirs brought suit when the decedent's former employer and life insurance company refused to pay life insurance benefits. *Id.* at 115. The ERISA-covered group plan expired on the decedent's sixty-fifth birthday, *id.*, but included an option provision that allowed him to convert the employer-provided policy to a non-ERISA individual policy within "the thirty-one day period immediately following the date of [] cessation [of coverage]," *id.* n.1. If the employee died within thirty-one days, then he would be covered under the group policy as if he had purchased the new policy. *Id.* at 114. The decedent died on the thirty-second day after his sixty-fifth birthday without having applied for the individual life insurance policy. *Id.* at 115. When the insurance company declined to pay the death benefit, his heirs brought suit and argued that, because the thirty-first day was a Sunday, the option period should have continued to Monday, the next business day. *Id.* The district court applied Rule 6(a)'s next-business-day provision, and granted summary judgment to the heirs. *Id.* at 117. Reversing, the Fifth Circuit held that the provision did not apply because the option to convert the group plan to an individual plan was a private contractual agreement. *Id.* at 117–18.

*Jones* is distinguishable and does not support AETNA's argument. First, unlike this case, *Jones* did not interpret a contractual provision that was required by ERISA. In fact, the court emphasized that defendants, as offerors of a private option contract, had "full control of . . . the length of time during which the power of acceptance shall last." *Id.* at 117. By contrast, AETNA set the appeal period at 180 days to achieve the minimum possible compliance with a statutory and regulatory mandate. In doing so, AETNA did not "full[y]

control" the length of time by which an appeal could be filed. *See id.* Second, the *Jones* court's reasoning hinged on its determination that there was no ambiguity in the contractual provision. *Id.* at 116. In particular, the court explained that "[t]he qualifying phrase 'immediately following' can have no other meaning than the 31 days in their normal and natural sequence, without concern as to the days of the week . . . ."[8] *Id*. In contrast, AETNA's April 18, 2011 denial letter contains no such qualifying clause or explanation of how LeGras should calculate the 180-day appeal period.

Finally, AETNA warns that applying the time-computation method advocated by LeGras to the calculation of deadlines under ERISA's claims procedures would create confusion and great administrative burden. Specifically, AETNA contends that it would "put claims processors for ERISA-governed plans in the unenviable position of keeping up with all state holidays for all [fifty] states . . . ." AETNA's argument is unpersuasive. The plan administrator is responsible for identifying, and clarifying, applicable due dates in compliance with ERISA.[9] Although we recognize

---

[8] The operative text in *Jones* provided that "[t]he acquirement period is the thirty-one day period immediately following the date of such cessation," and that "[i]f a Participant . . . dies within the thirty-one day period immediately following the date he ceased to be a covered individual, the amount of insurance which he would have been entitled to . . . will be paid . . . ." *Jones*, 90 F.3d at 115 n.1.

[9] ERISA's regulations require that plan administrators establish claims procedures that set forth the "applicable time limits" for challenging denied claims. 29 C.F.R. § 2520.102-3(s). The administrator must do so in a "sufficiently comprehensive" manner that is "calculated to be understood by the average plan participant." *Id.* § 2520.102-2(a). For instance, the regulations instruct administrators to use "clarifying examples and illustrations" where necessary. *Id.* Here, there is no

the burden placed on administrators to "keep[] up" with state holidays, this burden must be counter-balanced with the clarity and consistency attained by applying the time-computation method that we hold applies to calculating the 180-day period within which LeGras had to mail his notice of appeal.

## III.

Although the 180-day appeal period specified in the April 18, 2011 denial letter ended on Saturday, October 15, 2011, ERISA federal common law required that AETNA accept LeGras's appeal as timely as he mailed it on the first weekday following the weekend. It was error for AETNA and the district court to conclude that LeGras's administrative appeal was untimely. We reverse and remand to the district court with directions to remand to AETNA, the Plan's Claims Paying Administrator, for consideration of LeGras's appeal.

**REVERSED AND REMANDED.**

---

indication that AETNA took any steps to clarify the time limit for appeal. Similarly, AETNA did not specify a date certain before which LeGras had to mail his request for appeal. Nor did it provide an illustration or example of how LeGras should calculate the 180-day period.

N.R. SMITH, Circuit Judge, dissenting:

Mr. LeGras had 180 days to appeal an adverse decision from AETNA Life Insurance Company ("AETNA"), denying him long-term disability benefits under a Long Term Disability Plan ("Plan") provided by his employer, Federal Express ("FedEx").  He lost his opportunity to appeal as a result of his own conduct; he sent his appeal to AETNA two days after the appeal period expired.  Even LeGras agrees that he sent his appeal two days late.  To excuse LeGras's untimeliness, the majority turns a simple case of contract interpretation into an opportunity to (without precedent) expand federal common law surrounding the Employee Retirement Income Security Act ("ERISA") to rewrite private contracts.  I cannot go along with them in "bailing LeGras out."

"An ERISA plan is a contract that we interpret in an ordinary and popular sense as would a person of average intelligence and experience.  We look first to the explicit language of the agreement to determine, if possible, the clear intent of the parties . . . ."  *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 708 (9th Cir. 2012) (internal quotation marks, citations, and alterations omitted).  In general, "[c]ontract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself."  *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999).  "That the parties dispute a contract's meaning does not render the contract ambiguous; a contract is ambiguous if reasonable people could find its terms susceptible to more than one interpretation."  *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009) (internal quotation marks omitted).

The terms of this contract are not ambiguous. By the Plan's terms, LeGras had 180 days to file his appeal with AETNA by mail. All parties agree that LeGras received notice from AETNA that his long-term disability claim had been denied on April 18, 2011. It is also undisputed that October 15, 2011, is 180 days from the date of the notice. Where is the ambiguity? A person of average intelligence and experience would understand 180 days to mean precisely what LeGras understood it to mean here.[1] LeGras knew that the 180-day period ended on October 15, 2011; our only question: whether he should be allowed to extend that time by two days solely because the deadline for the 180-day appeal period happened to be on a Saturday.

In other words, LeGras messed up; he failed to abide by his contract and now seeks an excuse to set aside his failure. LeGras has never offered any reason to explain why he failed to timely appeal. He could have mailed that appeal on any one of 180 days after April 18, 2011, including October 15, 2011. He offers no explanation why he did not. Post offices around the nation (even in Pocatello, Idaho) are open on Saturdays. LeGras offers no evidence to the contrary and no explanation why he did not send his appeal on that Saturday. All LeGras had to do (in order to preserve his rights) was mail the appeal within a six-month window. Instead, he flatly argues that he does not need to comply with his contract. Because the terms of the Plan are clear, the district court did

---

[1] The majority's attempt to distinguish *Jones v. Georgia Pacific Corp.*, 90 F.3d 114 (5th Cir. 1996), by holding that the terms of the plan at issue in *Jones* were not ambiguous, is not persuasive. Slip Op. at 11–12. In the only respect in which *Jones* is relevant to this case, this Plan is no more ambiguous than the plan in *Jones*; neither plan specifies what happens if the last day falls on a Saturday.

not err when it dismissed LeGras's action with prejudice for failure to exhaust his administrative remedies. Our analysis should end here, with the contract.

To get around the plain terms of the contract, the majority is forced to create federal common law, in light of the ERISA regulations applicable to the Plan.[2] These regulations provide that an employee benefit plan "shall establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination." 29 C.F.R. § 2560.503-1(h)(1). In order to have a reasonable opportunity, an employee benefit plan must "[p]rovide claimants at least 180 days following receipt of a notification of an adverse benefit determination within which to appeal the determination." § 2560.503-1(h)(3)(i).

No one argues that the Plan did not comply with the ERISA regulations. Applying these regulations, the majority's logic "hits a dead end." The 180-day time limit in this case arises from the contract between LeGras, FedEx, and AETNA, and complies with the ERISA regulations. The Plan gave LeGras 180 days following receipt of the letter denying long term disability benefits to file his appeal, as the regulations outline. For that reason, LeGras never even asserted that the Plan, which incorporates the regulation's

---

[2] In doing so, the majority appears to go beyond the relief requested by LeGras. LeGras's briefing was focused on incorporating Fed. R. Civ. P. 6 into all time limits in insurance plans regulated by ERISA; LeGras would use the federal common law to accomplish that incorporation only if we determined Rule 6 did not directly apply, and then only to get him a couple of extra days to file. Although the basis for the majority's holding is not clear, it appears to have recognized that LeGras's Rule 6-based approach is not tenable and has instead opted to impose a rule of reasonableness on all terms in all ERISA insurance plans.

language, was in violation of ERISA or its implementing regulations. LeGras's only contentions in the district court and on appeal (prior to oral argument) were that Fed. R. Civ. P. 6 should be applied in some manner to the terms of the Plan and that AETNA breached the contract by denying his claim. In the absence of a claim that the Plan is non-conforming to the regulations, we do not have occasion to determine whether the 180-day time limit provided in the Plan and interpreted by AETNA is reasonable within the meaning of § 2560.503-1(h)(1). *See United States v. Pallares-Galan*, 359 F.3d 1088, 1094–95 (9th Cir. 2004) (noting that claims raised for the first time on appeal are deemed waived). Accordingly, the majority does not hold that the Plan violates ERISA; instead it undertakes to rewrite the terms of the contract.

The majority declines to accept LeGras's primary contention at oral argument and on appeal: that Rule 6 should be directly applied to compute the 180-day appeal period provided in the Plan. Instead, the majority suggests we must rewrite the unambiguous terms of the Plan, a private contract between the parties, in light of the federal common law and the purpose of ERISA.[3] I have no doubt that the majority is correct that we should construe ERISA liberally "in favor of protecting participants in employee benefit plans." *Batchelor v. Oak Hill Med. Grp.*, 870 F.2d 1446, 1449 (9th Cir. 1989). However, as already noted, we must begin with the contract. The terms of the contract are paramount, because "applying federal common law doctrines to alter ERISA plans is inappropriate where the terms of an ERISA plan are clear and

---

[3] Indeed, the majority's discussion of Rule 6, so central to LeGras's argument, is merely used to provide evidence that its preferred approach is "widespread" in other contexts. Slip Op. at 8–9.

unambiguous." *Zurich Am. Ins. Co. v. O'Hara*, 604 F.3d 1232, 1237 n.4 (11th Cir. 2010). The majority's holding ignores this limit on the reach of our power to craft federal common law for ERISA-regulated plans and drastically expands doctrines, meant to protect lay persons from deceptive plan drafting, to impose a "reasonableness" rule on every provision of an ERISA insurance plan. In doing so, the majority improperly conflates the requirement that an insured be given a reasonable opportunity to appeal an adverse decision with doctrines requiring an insurance contract to be interpreted in light of an insured's reasonable expectations.

Although the majority is correct that we have used the federal common law in cases interpreting ERISA plans, we have never used it in these circumstances. This is not a case, for example, where we are called upon to determine whether common law remedies are available regarding ERISA plans. *See Security Life Ins. Co. of Am. v. Meyling*, 146 F.3d 1184, 1191 (9th Cir. 1998). Further, in *Meyling*, we importantly noted that the plan terms limited whether the common law remedy was available in that particular case. *Id.* at 1192; *see Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 822 (9th Cir. 1992) ("Because the plan was unambiguous, the Greanys cannot avail themselves of the federal common law claim of equitable estoppel.").

The limiting power of unambiguous plan terms to the use of the federal common law also frames any discussion of the case that is the linchpin of the majority's holding: *Saltarelli v. Bob Baker Group Medical Trust*, 35 F.3d 382 (9th Cir. 1994). In that case, we endorsed the "reasonable expectations" doctrine for ERISA insurance plans, *id.* at 387, but we never suggested (as the majority now does) that the doctrine was available to revise unambiguous plan terms

where those terms did not implicate questions of coverage. The majority interprets *Saltarelli* to mean that it can read an insured's "reasonable expectations" into any term of an ERISA plan without limits. However, the doctrine was never intended for this purpose. Instead, the "reasonable expectations" doctrine is meant to protect insureds "*regarding the coverage afforded by insurance carriers* even though a careful examination of the policy provisions indicates that such expectations are contrary to the expressed intention of the insurer." *Id.* at 386 (internal quotation marks omitted) (emphasis added). Therefore, in *Saltarelli*, we concluded that an exclusionary clause for preexisting conditions was unenforceable given that it was not plain and conspicuous. *Id.* at 386–87. We have never applied the "reasonable expectations" doctrine outside the context of determining the reach of insurance coverage. *See, e.g.*, *Snow v. Standard Ins. Co.*, 87 F.3d 327, 331 n.1 (9th Cir. 1996) (declining to apply doctrine of reasonable expectations to plan administrator's discretion), *overruled on other grounds by Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir. 1999) (en banc).

The cases that the majority cites (to support its holding that an insured's reasonable expectation that the time period to mail an appeal would not end on a Saturday) are not persuasive. In *Street v. United States*, 133 U.S. 299 (1890), the Supreme Court held that an executive action taken one day outside of the Congressionally mandated time frame for the officer to act was legal in part because the last day was a Sunday. *Id.* at 305–06. Far from recognizing any "general understanding" regarding the performance of a legal act on a weekend, Slip Op. at 7–8, the Supreme Court grounded its holding in the purpose of the statute and the special nature of *Sunday* as a holiday or a *dies non*. *Id.* at 305–07. In

*Armstrong v. Tisch*, the Fifth Circuit decided to incorporate Rule 6 into a regulation, because the deadline could fall on a date "on which the act cannot be legally done." 835 F.2d 1139, 1140 (5th Cir. 1988) (internal quotation marks omitted). The only act, that LeGras was legally required to do in order to preserve his appeal rights, was to mail a letter to AETNA. LeGras does not argue he could not legally mail a letter on a Saturday.

Similarly, the majority's reliance on *Schikore v. BankAmerica Supplemental Retirement Plan*, 269 F.3d 956 (9th Cir. 2001), for the proposition that we must invoke the federal common law to rewrite the terms of the Plan, is misplaced. Slip Op. at 7. In *Schikore*, this court held that the mailbox rule applied to litigation involving an ERISA plan. *Id.* at 964–65. However, the question before the *Schikore* court was fundamentally different than the question before us now. That difference illuminates why deploying the federal common law is inappropriate in this case. The question in *Schikore* was "not the interpretation of a plan term . . . but, rather, whether an evidentiary rule of federal common law is applicable in the absence of a provision in a plan rejecting that rule." *Id.* at 962 n.3. The court in *Schikore* clearly stated that the mailbox rule "does not operate as a rule of construction." *Id.* at 961. The court was not tasked with construing the meaning of plan terms at all but with resolving "a critical evidentiary question: specifically, who bears the ultimate burden of establishing receipt when receipt is disputed and the evidence is inconclusive." *Id.* at 963. Our power to create federal common law with regard to ERISA plans was well suited to the task in *Schikore*. Faced with an evidentiary dispute, the court crafted a presumption to assist in the resolution of the case. However, our job in this case is decidedly different: we need only determine the meaning of

180 days within the context of the Plan. There is no dispute that LeGras failed to comply with this Plan provision.

Further, LeGras is distinguishable from the plaintiff in *Schikore*. We must determine, not whether LeGras complied, but whether we should come to his rescue after he unambiguously missed the 180-day deadline. The Fifth Circuit has already answered this question in *Jones v. Georgia Pacific Corp.*, 90 F.3d 114 (5th Cir. 1996). There, the Fifth Circuit refused to apply Rule 6 to a private contract when the terms of that contract were unambiguous. *Jones*, 90 F.3d at 117. The majority's attempts, to distinguish the present case from *Jones*, compromise its own reasoning. The majority holds that *Jones* is not applicable because it "did not interpret a contractual provision that was required by ERISA . . . defendants, as offerors of a private option contract, had full control of the length of time during which the power of acceptance shall last." Slip Op. at 11 (internal quotation marks and alterations omitted). However, the *Jones* plan beneficiary lost his plan benefits, because he died one day outside of the time to make an election necessary to preserve his rights. *Jones*, 90 F.3d at 115. Therefore, the prudential considerations (the majority now asserts for LeGras) would be far more appropriate to trigger crafting federal common law for the beneficiary in *Jones*. He could not control the date of his death. On the contrary, LeGras had six months to mail a letter and failed to do so. The Fifth Circuit did not rescue Jones with federal common law; our case presents far less reason to rescue LeGras. The Plan is (similar to the contract in *Jones*) a private contract for which we are bound to apply its unambiguous terms. The Fifth Circuit got it right; it refused to, "in effect, write into the policy a provision that would extend the period . . . if [the deadline falls on a weekend]." *Id.* at 116.

We should do the same here. The Plan terms are clear and comply in every respect with ERISA regulations. LeGras had 180 days to notify AETNA that he wanted to appeal its decision. One can only conclude that LeGras failed to abide by the clear and unambiguous terms of his contract. The analysis in this case should end there. But the majority (intent on "bailing LeGras out") unnecessarily intrudes upon the ability of the parties to enforce the terms of their negotiated private contract.

Therefore, I must respectfully dissent.